for the appellant, Akshay Matthews, and for the appellee, Amelia Burgess. Thank you, Mr. Clerk. Akshay Matthews, is that correct? Did I say that correctly? Are you ready to proceed? Yes, sir. Okay, please do so. May it please the Court. Counsel, I'm Assistant Appellate Defender Akshay Matthews, and I represent Keith Smith in this appeal. I'll be arguing issues 1, 2, 3 in the order written in the brief. For issue 4, I'll be standing on the arguments made in the brief. This case concerns the trial court's arbitrary and unreasonable denial of a defendant's request for counsel and the errors that ensued as a result. The Sixth Amendment requires that defendants are provided effective assistance of counsel. Mr. Smith was denied that fundamental right, and as a result, he did not receive a fair trial. On March 26, 2014, Mr. Smith revoked his waiver of counsel and requested the trial court to appoint an attorney. The trial court denied Mr. Smith's request, even though the trial did not take place until three months after. On April 14, 2014, Mr. Smith requested that the court appoint standby counsel. Again, the trial court denied his request. Throughout that three-month period, Mr. Smith diligently searched for pro bono counsel to assist him, but he was unsuccessful. Before trial, the court refused Mr. Smith's request to re-hear a motion to suppress where new evidence was discovered, and the trial court refused to remove Mr. Smith's shackles. Ultimately, Mr. Smith was compelled to waive his jury trial and represent himself pro se in a stipulated bench trial. Illinois abides by the continuing waiver rule, which states that a competent waiver of counsel by a defendant carries forward to all subsequent proceedings unless the defendant later requests counsel or other circumstances suggest that the waiver is limited to a particular stage. Now, appellate courts have affirmed denials of defendants' request to revoke waiver of counsel, but these cases generally involve the issue of timeliness or gaming the system. With regard to timeliness, in Pratt, the appellate court affirmed the trial court's denial of a defendant's request to revoke waiver, but in that case, the defendant requested an attorney on the day of the trial. Here, it was three months before Mr. Smith's request to revoke waiver and when the trial began. Mr. Matthew, we know after the fact that ultimately it was three months between March 26, 2014 and when the case was tried, but as of March 26, when was the case set for trial? This case was set for a pretrial hearing April 14, 2014. I don't know the exact day it was set for trial, but the pretrial was set over two weeks later. And that period of time should be enough for counsel to have been appointed and gotten familiar with the case, especially because the trial court said this was a simple case. It was their position. In terms of the consideration whether or not it was being done for purposes of delay relative to the trial setting, we're not talking about three months really here. We're talking about whenever that trial setting was at the time of the March 26 request for counsel. So can you be any more certain about when that trial setting was? I can look at my notes real quick. And if you can't find it here quickly, maybe during Ms. Burgess's portion of the argument you can find it. I don't want to stall you out. Pretrial was set April 14. That was over two weeks after he decided to revoke his waiver. And in Palmer, this court recommended to set a deadline and its suggestion was a few weeks before trial. So this is already longer than that period because the pretrial was set two and a half weeks and trial, even if it was set that next week, that would be over three weeks before trial. The state argues that January 6, 2014 was a deadline set by the court. This, however, was a motion deadline and not specifically for the revocation of waiver of counsel. Additionally, the court heard multiple motions past that date. So for the court to just not rule on this particular request would be arbitrary and capricious. Additionally, the trial court's warning when Mr. Smith revoked his counsel was that he would not be able to change his mind on the day of the trial. So effectively, the court didn't set a deadline except don't do it on the day of the trial. And the court's reasoning when Mr. Smith, when the court denied Mr. Smith's waiver or revocation of waiver, his reasoning was that he would not be able to change his mind on the day of the trial. Further, the court was willing to substitute private counsel during this period of time, which shows that it wasn't the fact that delay from substitution was the issue. It was the fact that the court didn't want to appoint new counsel for this indigent defendant. Now, regarding the gaming of the system, Mr. Smith revoked his counsel on July 1, shortly after the preliminary hearing. And he did not substitute and dismiss multiple attorneys during this period of time. And he didn't oppose, the record doesn't show that he opposed the reappointment of the public defender's office. Mr. Smith's complaint of preliminary hearing was the manner in which his counsel cross-examined a witness. And Mr. Smith's complaint of preliminary hearing was the manner in which his counsel cross-examined a witness. Now, Mr. Smith, after waiving his counsel, represented himself as best as he could, given his lack of legal education. And many of the issues we raise today on appeal are because he was able to preserve those errors. Following the suppression hearing is when Mr. Smith realized he was not equipped to represent himself. The motion to suppress was the first time he ever cross-examined a witness. And after the motion to suppress, he told the court, I don't know exactly what I'm doing. And after the motion for standby counsel, he says that the case involves issues of prosecutorial misconduct that he wanted to raise, but he didn't know how. Now, the motion to suppress was a key point in this trial, and it fundamentally changed the trial strategy. While Mr. Smith may have felt he was able to represent himself before that motion to suppress, the decision on the motion to suppress changed the posture of the trial. To which Mr. Smith may have felt that he could no longer represent himself. Mr. Smith wasn't trying to game the system. He was trying to do what was best to advocate for his rights. Further, the State argues that Mr. Smith entered into a plea agreement and therefore was no longer a critical stage. The State presents no case law to establish that position. And further, this was not a guilty plea. This was a stipulated bench trial. And case law has said that post-trial motions and sentencing hearings are critical stages where counsel is required. The trial court misunderstood the continuing waiver rule and applied only the first part of the rule. The entire rule is that waiver of counsel carries forward unless the defendant later revokes his waiver of counsel. Here, Mr. Smith did that. Therefore, the court abuses discretion and did not correctly follow the rule. The court's abuse of discretion violated Mr. Smith's fundamental right to counsel. Therefore, Mr. Smith requests a new trial with the appointment of counsel. With regards to the second issue, the trial court abuses discretion when it determined that Mr. Smith would be required to wear leg shackles during a jury trial. Now, the State argues that this was a harmless error because he wasn't in the presence of the jury. The State does not challenge that an error occurred. And the record is clear that the trial court did not comply with the requirements of Supreme Court Rule 430 or Bruce. Mr. Smith waived his right to a jury trial because of the shackling. He objected to it at trial, before trial, and he included in his post-trial motion that he would proceed to a jury trial had not the court erroneously decided. So, can the trial court comment on the factors involved in Bruce? Maybe not every factor, but comment on his prior criminal history, his size, his behavior in the courtroom, and those types of things. Initially, the trial court considered two factors. It considered his temperament, based on what was known to the court and the security officers, and his criminal history. The court didn't go into detail on what his criminal history was, but the temperament factor, the security officers told the court that he had presented no problem. And the record doesn't show that Mr. Smith ever had an outburst. He zealously represented himself, but he never crossed a line where he was disrespectful to the court. So, that factor actually favors not restraining Mr. Smith. With regards to his criminal history, he does have a somewhat likely criminal history, but none of his prior offenses were crimes of violence. There were drug possession charges, most of them. The court denied his request based on those two factors, and he again petitioned the court, and the trial court decided that he was not going to restrain Mr. Smith. The trial court, at that time, considered his age, physical characteristics, and the trial court, he said he had verbal altercations with the court, which the record does not, I don't think, supports. If the defendant waives his right to proceed to trial, can he later claim a violation of Rule 430? Yes, Your Honor. An example is in Staley, the Supreme Court found that, held the new adjudicatory hearing for the defendant where he was shackled during a bench trial. The defendant there had waived his jury trial, but the court didn't find harmless error. But it proceeded to trial, a bench trial, correct? Yes. And here we have a stipulated bench trial. Well, okay, so that's even a third variant of finding a guilt. So, I'm going to ask you a question about the stipulated bench trial here in a moment, but I understand that the inquiry must be made even if it's a bench trial, but here it didn't proceed to a bench trial. It didn't proceed to a jury trial. It proceeded via a stipulated bench trial. Should Rule 430 be applied to control or to be applied in that situation, I should say? For the facts of this case, I do believe so, Your Honor. Mr. Smith went, proceeded by a stipulated bench trial to preserve that error. It was, he wanted to go to a jury trial, he states in his post-trial motion. He was willing to, he wanted to have a jury trial, but based on him having leg restraints, it would not have resulted in him having a fair trial. This is especially the case because Mr. Smith was representing himself pro se. Unlike other attorneys, or other defendants, he didn't have an attorney to stand and represent him. Mr. Smith would have been responsible for all of that. And what all of these cases focus on is the presumption of innocence. And by the court ordering that he, that Mr. Smith would be shackled, Mr. Smith was not going to get that presumption of innocence. Well, what you're arguing then is that every inmate who's shackled at his trial is denied due process. And unfairly prejudiced, just by the simple act of shackling, no matter what the court's findings are. The, when it does go to jury trial, is that right? Right. Well, in those cases... In those cases, the court generally applies the harmless error analysis. Because there are times when a defendant goes to trial and the jury never knows that they were shackled. And that's most, that's more common when an attorney, or when a defendant is represented by an attorney. It's entirely possible that the jury would not know that they were shackled. I don't understand how the defendant is able to preserve a shackling issue based on the, on this record where he weighed the jury and said, well, I would have gone to trial, you know, if I wasn't shackled. Doesn't he have to actually proceed, go through the process of the jury trial, and then in that way preserve the issue for appeal? Because couldn't any defendant, you know, make a claim, oh, I would have gone to trial, you know, if not for, you know, being shackled? There's no case law saying that a defendant has to go through the trial to preserve that argument. The case law states that it's the presumption of innocence that matters. The fact that, and that's why even in bench trials, that presumption is preserved. In a bench trial, when a defendant weighs his right to a jury trial, he still has that right to not be shackled without a proper boost hearing. So the defendant has gone through the bench trial in that circumstance. Here you don't have a jury trial, you don't have a bench trial. The defendant is saying, I would have gone to a jury trial, but for the judge's ruling that in regards to the shackles, it doesn't seem like there's a case that would, you know, support his ability to preserve that claim of error. I don't know, I'm not quite getting my head wrapped around it, and maybe I will as I hear more of the argument. I would just like to add that in a bench trial, the prejudice would have to have come from the judge if we're talking about prejudice from a jury. That's no different in a stipulated bench trial. A defendant can be prejudiced in the same way in a bench trial as a stipulated bench trial. So the distinction there is no different. In both cases, the judge is finding the defendant guilty. Just the manner in which the evidence is presented is what's different. Are you saying that the fact that he was shackled during the stipulation is a violation in and of itself? I thought you were just arguing that the only reason he agreed to the stipulated bench trial was because he thought he was going to be shackled.  Because a stipulated bench trial is a bench trial. The judge still makes that determination of guilt in both those cases. The only difference is the manner in which that evidence is presented. And here, Mr. Smith didn't even agree to all the stipulations.  The trial court erred when it denied Mr. Smith's renewed request for a motion to suppress, where new evidence relevant to the suppression issue was discovered. Here, a new hearing should have been granted, because that evidence was not available to Mr. Smith before the suppression hearing. And the trial court does not take a position on whether it was newly discovered. However, it rules on what that video's effect is, which is it affects the impeachment of Officer Scott. Officer Scott's testimony was a key piece of the decision to suppress the evidence. And the complete record would not be before this Court without that, a new suppression hearing. Mr. Smith was denied a fair trial. He was not allowed to present newly discovered evidence, and he was shackled, and the Court refused to remove his shackles. Mr. Smith therefore requests that this Court reverse the trial court, grant Mr. Smith a new trial with directions for the trial court to conduct a new suppression hearing. Okay, thank you. You'll have rebuttal. Ms. Burgess. May it please the Court, Counsel. Good afternoon. My name is Emilio Burgess, and I am appearing today on behalf of the people of the State of Illinois. Consistent with the defendant's argument, I will address the first three arguments contained in the defendant's brief. And if time allows, I will briefly address the fourth, as that is a much more straightforward analysis. With regard to the first argument made by defendant, with regard to the question of this waiver of counsel, this is an example of where the defendant did what he was entitled under the Constitution to do, which is to choose to represent himself, and to suffer both the benefits and the perils that that choice entailed. It certainly created a complicated situation for the trial court to deal with, as the defendant in this particular instance was very aggressive in filing multiple motions, and asking the Court to examine and re-examine issues on multiple occasions. It created a difficult situation for the Court, and continued to cause delay after delay after delay, in what the parties agreed was a relatively straightforward matter. Did the trial court make any comment or finding as to the request made on March 26, 2014, that being made for the purpose of delay? The Court did not make a specific finding in a very explicit way. The Court took that into consideration, looked at when the trial was set, and according to my notes, as of March 26, the trial date was set for April 24. The Court also noted that there were multiple motions yet to be determined, and that the defendant had stated an intent to continue filing motions. And the Court did express its concerns that it was time to get the case moving along, and to move forward through trial. It is also my recollection of the record that the trial court expressed concern that bringing in counsel at that point in time would cause unnecessary delay, and that the counsel would have to get up to speed in the case. And certainly while it went unstated, it would have been appropriate for the Court to have some concern in the back of its mind about whether or not a defendant would have been satisfied with the appointment of counsel. Clearly in this particular instance, counsel was quickly disillusioned with the representation he originally was given, and at the end of the preliminary hearing, chose to go pro se. So all of those considerations are ones the trial court appropriately took into account, or could have taken into account, to conclude that it would not be in the best interest of the defendant, or in the process, at that point in time, to appoint counsel. Especially when despite the hesitation the Court initially expressed in allowing the defendant to represent himself, the defendant was successfully navigating the system. He certainly was doing things differently than one might expect an experienced defense attorney to do, but he was questioning witnesses, he was procuring evidence, he was filing multiple motions, he was not exhibiting any difficulties going through the system, and of course ultimately, he was able to negotiate a plea agreement in his favor that greatly reduced the potential sentence that he suffered. So with regard to this analysis, it is perhaps appropriate for the Court to focus on what the trial court could have done, and what the trial court was required to do. Are we to look at the propriety of the Court's decision in denying the appointment of counsel based on the defendant's actual performance during trial proceedings, per se? Or are we to look at the trial court's order, the propriety of the trial court's order, denying it based on the defendant's request, the words used, the stage that the case was at at the time, and whether or not the Court made findings about it being timely made, and whether it was being sought for purposes of delay? Based on the existing case law, it would appear that the analysis is relatively open to consideration. There's no simple four or five point test that the trial court is required to use in this particular instance. Factors that have been considered are things like delay. Would this cause unnecessary delay? However, it seems that it would be reasonable for the trial court also to consider the consequences of not granting that request. So if one of the consequences it may consider is will it cause unnecessary delay, it is reasonable and rational for the trial court also to consider what is the consequence to the defendant. Will the outcome be different? Will the defendant be disadvantaged by this decision? Are there other factors that could outweigh the possibility for delay? All of those things seem appropriate for the trial court to take into account, keeping in mind that in this particular instance, the trial court had warned the defendant that these delays were becoming unnecessary and that the case needed to proceed through trial. And in December of 2013, had actually set a deadline. And the trial court had informed the defendant that as of January 6, 2014, the defendant could not reasonably expect any additional motions to be considered. How long had the case been pending at that time? At that point in time, the case had been pending for roughly seven or eight months, if my math is correct. So seven or eight months at that point in time. And I believe the trial court's concerns were not just the length of time the case had been pending, but the number of motions that were consistently being filed at that point in time. Over a dozen motions had been filed, mostly rehashing the same arguments over and over again. And the defendant had yet to get to the more important or the more critical motion that the trial court knew he intended to file, which was the motion to suppress with regard to the evidence discovered through the traffic stop. As a result, this is an instance where the trial court perhaps would have been more strict with that deadline if the defendant had been represented by counsel. But the trial court was forced throughout the process to continue to try to deal with the fact that this was a pro se defendant and he seemed to either not respect or not understand the meaning and the importance of these different deadlines and the fact that when the trial court sets a trial, it fully expects for it to go to trial that day. And it requires the trial court, as the trial court noted, to call jurors, to inconvenience individuals, to have witnesses show up. And all of these things were taken into account by the trial court as it tried to consider the best path forward when faced with defendant's request after the motion to suppress that he suddenly have an attorney appointed to him again. Your suggestion that we look at the defendant's actual performance as his own attorney in retrospect in determining whether or not the denial of his request for appointment of counsel is proper seems to be tantamount to saying he didn't suffer prejudice. And it doesn't seem that the cases view prejudice as an element of the inquiry. It's just simply a matter of whether or not he was denied the fundamental right to assistance of counsel. Do you agree? Yes, Your Honor. However, both the Illinois and the U.S. Supreme Court recognize that even in dealing with errors that have implications that could impede with an individual's constitutional right, the harmless error analysis is still appropriate. And in this particular instance, it is the State's position that even if it was preferential or even if the trial court should have granted counsel at some point in time based on defendant's request, any error that was committed by the trial court was indeed harmless because it did not affect the ultimate outcome of this particular case. That might not be true in all cases where this type of scenario was experienced by the defendant, but it is true in this particular instance because the defendant negotiated his own sentence. He chose to move forward in a stipulated bench trial, and he did so with an understanding that the State would place a cap on his request for sentencing, and the trial court did not exceed that cap. What about his request prior to sentencing? Yes, Your Honor. Along those lines, in many instances, it would be preferable, if not required by the trial court at that point in time, to say we're moving into a different stage of proceedings. This is critical because it is dealing with the defendant's freedom. That appointment of counsel at that point in time would be appropriate. But in this instance, an exception can be made to that because the outcome of the sentencing hearing was more or less already determined. Certainly the defendant might have hoped he would receive a lesser sentence, and he asked the court for a lesser sentence, but he had no reasonable expectation that he would receive one based on the stipulated bench trial, the fact that he had extensive criminal background, and the fact that he had consented to that ultimate sentence through entering into the plea agreement with the prosecutor. As a result, even if in other cases that are similar to this one, it might be fine to be reversible error, in this particular instance, it is harmless. It did not change the ultimate outcome, and it did not undermine the defendant's rights. A similar argument applies to the second issue that is to be considered by the court today, and that's with regard to the use of restraints. The trial court did make a number of what could arguably be considered the most pertinent of the inquiries with regard to whether or not restraints should be used. The defendant's activities that day, his demeanor, his interactions with the correctional officers, his past history in terms of his prior convictions and the prior charges against him, all of those were discussed by the trial court. However, looking at a very strict analysis of Rule 430, not all of the factors were considered by the court on the record. However, any complaint that the trial court aired there was waived or forfeited by the defendant the moment he chose to move forward on a stipulated bench trial. Any argument that he was deprived of his ability to represent himself at jury trial was simply waived at that point in time, and in no way did the defendant attempt to preserve that. At the time he chose to move into a stipulated bench trial, it was based on his plea agreement with the prosecutor. He did not say to the court, Your Honor, I am doing this because of your ruling with regard to the restraints. He had no point in time did he say to the court, Your Honor, I believe I cannot get a fair jury trial under these circumstances. It was only after the trial and in the post-trial motion that the defendant for the very first time stated, in what can be considered a self-serving argument, that of course he would have gone through a jury trial if the trial court had acted differently. Of course, this is in direct conflict with some of the other comments made by the defendant, not just by the timeline and the fact that the defendant only entered into the stipulated bench trial because he had gotten a favorable plea agreement, but he also stated on the record before the trial court that the reason he chose to go through a stipulated bench trial and to seek out a plea agreement is because he understood he would not win at trial, not because of the restraints, but because of the evidence, and that he believed his case was very weak. That is a rational position for a defendant to take, and it was rational for him to then, understanding the weakness of his case, to seek to prevail on a better outcome, which is what he did. But with regard to the issue of restraints, it has to be preserved in some way, shape, or form, and that is consistent with virtually every other error that the trial court or any of the parties could make, that the defendant is required to raise those or to preserve them in some manner. The defendant did not do so here. Now, the defendant on appeal, for the first time in his reply brief, argues it was also error for the trial court not to do a Rule 430 hearing with regard to the stipulated bench trial. The State would respectfully point out that raising it for the first time on the reply brief is the inappropriate time to raise that particular argument. However, as the court previously inquired, there is a fundamental difference between a bench trial, where Rule 430 applies, and a stipulated bench trial, where Rule 430 does not apply, and does not apply for good reason. Well, just by the language of 430, it could. I mean, it says the determination of whether to impose a physical restraint shall be limited to trial proceedings in which the defendant's innocence or guilt is to be determined. And really, by definition, a stipulated bench trial would constitute one of those proceedings, wouldn't it? Yes, Your Honor. Obviously, it is wrongly worded language. However, Rule 430 does not apply to guilty pleas. It does not apply to many motion hearings. And so there's something fundamentally different about a stipulated bench trial because generally it is understood that guilt or innocence ultimately is not an issue. Of course, there are circumstances where that is an inaccurate statement, so I say it with some degree of hesitation because there is such a thing as a stipulated bench trial that leads to a not guilty. But that is a rare event, and it is usually due to oversight in some nuance or procedural issue. However, in the ordinary course of events, a stipulated bench trial has a single outcome, and that is a guilty verdict. That is why, as the trial court did here, the trial court is required to admonish the defendant that he or she is proceeding into a proceeding that ultimately will result in the equivalent of a guilty plea. And those admonishments are given here. So there is a distinction that can be made between a stipulated bench trial and a bench trial. Further, the nature of a stipulated bench trial is different than the factual considerations that are taken into account to justify Rule 430. Many of those are dealing with the defendant's ability to move around, to be perceived as being free of guilt by a jury of lay people, as well as the defendant's ability to interact with his attorney with regard to the presentation of evidence. In a stipulated bench trial, there generally are no witnesses. There is no presentation of evidence in the traditional trial sense. So it's a very different type of proceeding that is being implemented and one where the concern about the use of restraints is not present. With regard to the third argument made by the defendant today, the denial of the reconsideration of the motion to suppress, this deals with a very, very small portion of evidence that the defendant now claims he was not aware of prior to the hearing on the motion to suppress. There is some question in the record whether that is accurate, because the defendant was shown the video prior to the motion to suppress, and it was only at a later date that he states that he was shown a truncated version of that video. It's impossible from the record to know what portions of the video he originally saw. However, as the state has pointed out, the defendant's memory is not always perfect, as is true of most people. Well, how did the defendant reply to that argument that you made in your brief? I'm trying to remember. Was there an acknowledgment made by the state at some point that it hadn't been turned over? The state acknowledged that originally it had represented there was no video, and that was an inaccurate statement. And the state did what it properly should have. As soon as it became aware of the video, it made it available to the defendant. The question of whether or not the defendant was in some way shown a portion of the video that didn't show the first several seconds of it has not been answered. And I believe, if my memory serves correct, the state's attorney had no explanation for whether or not that indeed had occurred. Well, how did it come up? How was it discovered or not discovered? How did it come up? How did it become an issue in the trial court, this 10-second period of video? The defendant raised it. On the subsequent viewing, he claimed he had not originally seen that portion of it. So whether or not he did is in question. At best, the record is silent about what portions of the video he saw when. However, when looking at the timeline, it is impossible for this video to have introduced any new information that would undermine the propriety of that stop. And the reason is this. There were two officers involved, Officer Scott and Officer Donovan. Officer Scott testified twice, both at the preliminary hearing and at the suppression hearing, that he was driving down the interstate. He saw a defendant's vehicle driving in the left-hand lane below the speed limit. He began following him, and at that point in time, the defendant twice had his wheels pass over the center line. After the second time, he decided to initiate a stop. Officer Scott testified that he believed he was pulling over a potential DUI. But once he approached the vehicle and smelled the burnt cannabis, he knew there was something else going on, asked for consent to search, and was given that consent. Officer Donovan was not immediately behind Officer Scott the entire time. Officer Donovan testified that he came upon the scene to assist Officer Scott, and that he only arrived after Officer Scott had already made the decision to pull over. Of course, the timeline changes a little bit from time to time, as is consistent with most people's memories, and timelines change. But it is consistent that Officer Donovan did not come upon it later. So the fact that there is now a portion of video that shows perhaps some additional amount of time, between five and ten seconds, according to the trial court, from Officer Donovan's point of view, does not exclude any possibility that Officer Scott's testimony is accurate. Well, let me just suggest to you a scenario where it would make a difference. I mean, the trial court stated this. Even if I were to believe that this information was not shown to the defendant prior to the motion to suppress, which I'm not ruling on, it doesn't make a difference. The testimony of Scott in this proceeding wasn't nailed down as to when he made his observations. Nobody asked, was this before you reached Donovan's car? Was this after you reached Donovan's car? Doesn't that make the point for the defendant that if the video, assuming that it hadn't been provided, if it had been provided, if it had been shown to Scott during the course of his testimony at the motion to suppress hearing, he could have been asked, is this depicting the defendant's vehicle in the stretch that you say that it committed a traffic violation? And if he said yes to that, the trial court would be looking at it as well. And as you've indicated in your brief, you don't see it crossing the center line. So the defendant would have been deprived in that situation of asking Scott that question. So that would make a difference, wouldn't it? Under that very narrow inquiry, yes, it would. However, because the timeline is somewhat flexible and because Officer Donovan was pretty consistent in his testimony that he did not come upon the scene until after the decision to make the stop had been made, whatever is on the video from Officer Donovan's vehicle was highly unlikely and unexpected to show the crossing of the center line because that would have occurred prior to him arriving on the scene. Thank you, Your Honor. I have one question before you sit down. Am I correct that – well, I want to make sure for the record that defendant in this case has not claimed a discovery violation. Is that correct? That is correct, Your Honor. The inquiry is limited to whether or not the trial court should have reconsidered the motion to suppress. Okay. Thank you very much. Thank you. Your vote. State says there is not a simple test to whether when to allow revocation of the waiver. However, the test is that the continuing waiver rule, it says that a competent waiver of counsel carries forward unless the defendant later requests counsel. And here, the defendant requested counsel. In subsequent proceedings. Yes. Isn't that linked in there? Yes. Or circumstances suggest that a waiver is limited to a particular stage in the proceedings. And what I'm getting at is once you waive your right to counsel for the trial, you don't have the right to change your mind. The judge has discretion if you ask, but it's not required that the judge appoint you. Don't you agree with that? Because that's not a subsequent proceeding. That's the same proceeding. It's our position that you can split that proceeding into a pretrial and an actual trial phase. So that's what you're arguing. He waived it for pretrial proceedings, or did he waive it for the trial? He waived it. I don't think when a defendant waives counsel, he thinks, I'm waiving it for this particular proceeding, and I'm going to revoke that at sentencing. It's usually, I want to revoke counsel. And during that period of time, the pretrial period, that counsel should stay revoked. But if before trial, without causing delay and without gaming the system, the defendant wishes to revoke that waiver, then I think the continuing waiver rule says that the court should provide him counsel. You also argued in your first argument that there were two weeks, at least, between the pretrial and the trial, and therefore it wouldn't have delayed it. But I can tell you, as a trial judge, having dealt with a number of criminal trials and defense attorneys, if a defense attorney is getting into a case two weeks before trial, they're asking for a continuing case. There's no question about that. And I think most courts would allow it because you can't expect an attorney to effectively advise and represent a defendant on two weeks notice before going to trial. In Palmer, it was this court's suggestion that the deadline be set a few weeks before trial. And based on what the state said, it was April 24th that the trial was set. That is about a month, just shy of a month. And further, the court granted continuances to Mr. Smith during that period of time, and the court was willing to substitute private counsel. The court wasn't concerned about the delay that would cause. It was only concerned about the delay appointing counsel would cause. Both appointed counsel and substituted counsel would face the same kind of delays, but the court was only concerned about one sort of those delays. And the state talked a lot about the delays involved. The state was responsible for some of those delays. It took seven months for them to provide the video in question, and also Donovan testified that that video contained a crystal clear view of the back of Officer Scott's car. And when the defendant asked about the beginning part of the video, Officer Donovan does not acknowledge the existence of that, and further he says the video is not edited in any way. And as far as the January 16th deadline, Mr. Smith didn't even get the video at that point. He didn't even have all the evidence the state had. So this is not, the motions were not only what caused the delay. Also the state says that this is a guilty plea several times. This is a stipulated bench trial and stipulated bench trials can be tantamount to a guilty plea, but that's not the case here. Often the state argues that a stipulated bench trial is not tantamount to a guilty plea. And so it's unfair to say that all stipulated bench trials are a guilty plea, because that's not always the case. And in this case, this was not a guilty plea. Finally, the state talks about the consequences to the defendant. This is a fundamental right to be represented by counsel and a very important right that our judicial system takes seriously. This is not some minor inconvenience to the defendant. And this right was not given to the defendant, Mr. Smith. We therefore ask this court to reverse the trial court's ruling and grant Mr. Smith a new trial. Thank you.